UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS DUANE TRACY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00496-JPH-TAB |
| | ) | |
| WEXFORD OF INDIANA, LLC., | ) | |
| PAUL A. TALBOT, | ) | |
| MICHAEL MITCHEFF, | ) | |
| ROBERT E. CARTER, JR., | ) | |
| DUSHAN ZATECKY, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Summary Judgment for Defendants Carter and Zatecky**

Indiana prisoner Thomas Tracy is suing Commissioner Robert Carter and Warden Dushan Zatecky for deliberate indifference to his serious medical needs. He claims that Commissioner Carter and Warden Zatecky established policies or customs of inadequate staffing, training, supervision, and equipment in the medical units at Pendleton Correctional Facility. Mr. Tracy has designated no evidence to support these claims so the defendants' motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. Factual Background

The claims in this lawsuit concern Mr. Tracy's medical care while he was incarcerated at Pendleton Correctional Facility ("Pendleton") from August 25, 2017, through November 2019. *See* dkt. 36. When Mr. Tracy was transferred to Pendleton, he was receiving multiple medications for various chronic conditions, including diabetes, hypertension, mixed hyperlipidemia, gastroesophageal reflux disease ("GERD"), asthma, and back pain. Dkt. 76-1, pp. 1-6.

The Indiana Department of Correction ("IDOC") maintains a contract with Wexford of Indiana, LLC, for the provision of its medical services and health care treatment to the inmate population throughout its facilities. Dkt. 81-1, para. 6.

Warden Zatecky helped implement the health care policies and procedures as promulgated by the Indiana Department of Correction ("IDOC"). Warden Zatecky's staff members observed all policies outlining the administration of health care services to Pendleton's inmate population. *Id.* at para. 7. Warden Zatecky and Commissioner Carter have designated eight IDOC policies related to inmate medical care as evidence:

- IDOC Policy and Procedure 01-02-101: "Matters involving clinical judgment shall be reserved to clinical personnel, with the ultimate clinical authority residing with the Department's Chief Medical Officer or designee. All confined offenders shall have access to Health Services necessary to treat serious medical conditions. The general categories of services that shall be available are consultation, diagnosis, evaluation, treatment, and referral." Dkt. 81-2, p. 1.

- IDOC Health Care Procedure 1.08A: Establishes the employment of a Health Services Administrator to make decisions regarding "the deployment of health resources and the day-to-day operations of the Health Services program." Dkt. 81-3, p. 1.

- IDOC Health Care Procedure 10.10A: "Clinical decisions are the sole province of the responsible clinician and are not countermanded by nonclinicians . . . The Health Services Administrator (HSA) arranges for the availability of health services; the responsible clinician determines what services are needed; the facility's operations staff provides the administrative and Custody support for making the services accessible to offenders." Dkt. 81-4, p. 1.

- IDOC Health Care Procedure 10.21A: Requires IDOC staff to be annually trained to identify medical emergencies, administer first aid and CPR, obtain assistance, identify signs of mental illness and intoxication, transfer patients to medical facilities, perform

3

suicide prevention, participate in disaster drills, make health care referrals, and prevent transmission of communicable disease. Dkt. 81-5.

- IDOC Procedure 2.04A: Requires timely and unimpeded access to medical care. Dkt. 81-6.

- IDOC Procedure 2.27A: Requires consistent and continuous medical care for serious medical conditions. Dkt. 81-7.

- IDOC Procedure 6.01A: Requires that nursing staff be present on the infirmary 24/7, that the infirmary have medical equipment, and that IDOC coordinate with offsite providers for medical services that cannot be performed onsite. Dkt. 81-8.

- IDOC Procedure 8.01A: Describes various nursing protocols. Dkt. 81-9.

### III. Discussion

#### A.  Deliberate Indifference Standard

Because Mr. Tracy is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727-728 (7th Cir. 2016) (en banc). The defendants do not dispute that Mr. Tracy's chronic medical conditions are serious.

Thus, the availability of judgment as a matter of law turns on whether there is sufficient evidence upon which a reasonable jury could conclude that Defendants were deliberately indifferent to Mr. Tracy's chronic medical conditions.

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is a subjective test: "[t]he defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Id.*; *Petties*, 836 F.3d at 728. A court should "look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties*, 836 F.3d at 728.

### B. Analysis

Commissioner Carter and Warden Zatecky are non-medical prison officials. During his time at Pendleton, Mr. Tracy consistently met with onsite physician Dr. Paul Talbot for chronic care appointments and was prescribed numerous medications and other interventions for his chronic conditions. *See generally* dkt. 76-1 (medical records). For purposes of the Eighth Amendment, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019).

Mr. Tracy claims that Commissioner Carter and Warden Zatecky were deliberately indifferent by establishing policies or customs of inadequate staffing, training, supervision, and equipment in the medical units at Pendleton. *See* dkt. 36. To prevail on these claims, Mr. Tracy must show that such policies or customs existed and that they were the moving force behind constitutionally inadequate medical care. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d

293, 306 (7th Cir. 2010) (discussing complaint of deliberated indifference to serious medical needs due to alleged understaffing at jail).

The defendants have designated as evidence eight IDOC policies regarding inmate medical care. *Supra* at 3-4. The undisputed evidence is that these policies were followed during the time relevant to this lawsuit. Dkt. 81-1, para. 7. Mr. Tracy does not allege that these policies were not followed, nor does he argue that the policies were unconstitutional. *See generally* dkt. 102.

In his response brief, Mr. Tracy states that there were "no custody staff to walk nurses to pass medications or get medical care," and that inmates in restricted status housing met with physicians "in a little bitty office like a cell, with no medical equipment, examination table, nothing but the computer Dr. Talbot brings with him and if plaintiff is lucky a chair for him to sit in. At all times plaintiff is in handcuffs, and or leg shackles, with two custody officer escorts." *Id.* at 18, 45.

These verified statements do not create triable issues of fact. Mr. Tracy has not explained how the lack of custodial escorts for the nursing staff or the lack of equipment in the examination room impacted his medical care. As the Court explains in its order granting the medical defendants' motion for summary judgment, Mr. Tracy's complaints in this lawsuit concern treatment decisions allegedly made by his onsite physician, Dr. Paul Talbot, and Wexford's regional medical director, Dr. Michael Mitcheff; there is no evidence that Mr. Tracy was neglected by the nursing staff or that the lack of equipment in the examination room affected Dr. Talbot's treatment decisions.

Mr. Tracy also claims that Warden Zatecky failed to adequately staff Pendleton with custodial officers, which caused him to miss one of his physical therapy appointments. Dkt. 102, pp. 55-56. This verified statement does not create a triable issue of fact either. First, there is no evidence that any understaffing consistently affected medical care at Pendleton. Second, courts consider the totality of a prisoner's care in analyzing claims for deliberate indifference, *Petties*,

836 F.3d at 728, and a single missed physical therapy appointment over more than two years of consistent medical treatment does not support a reasonable conclusion that understaffing was a policy or custom that rendered Mr. Tracy's medical care constitutionally inadequate as required to support *Monell* liability. *See Thomas*, 604 F.3d at 306.

### IV. Conclusion

There is no evidence that Commissioner Carter or Warden Zatecky were deliberately indifferent to Mr. Tracy's serious medical needs. Accordingly, the defendants' motion for summary judgment, dkt. [80], is **granted**.

**SO ORDERED**.

Date: 9/30/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

THOMAS DUANE TRACY
143799
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel